IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

MICHAEL BRITT HODGES                                    PETITIONER
ADC #106398

V.                         NO.  5:07cv00062 SWW-JWC

LARRY NORRIS, Director,                                 RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Michael Britt Hodges, an Arkansas Department of Correction (ADC) inmate, brings this 28 U.S.C. § 2254 petition for writ of habeas corpus and supporting brief (docket entries #2, #3), asserting claims related to the denial of his parole plans and the determination of his parole/transfer eligibility.  Respondent has filed a motion to dismiss (docket entry #8), to which Petitioner has responded (docket entries #12, #13, #14).  For the reasons that follow, Respondent's motion should be granted, dismissing this action in its entirety.

I.
Background

Following entry of a guilty plea in June 1995 in the Circuit Court of Pulaski County, Arkansas, Petitioner was convicted of attempted rape and violation of a minor.  He was sentenced to imprisonment terms of twenty years and ten years, respectively, to be served

concurrently.  (Resp't Ex. A.)[1]  He has fully served the ten-year sentence; therefore, the attempted rape conviction and twenty-year sentence are the only ones at issue here.

It is undisputed that, on November 11, 2004, the Arkansas Board of Parole granted Petitioner transfer to Department of Community Correction (DCC) supervision.  (Pet'r Ex. KK to docket entry #12.)  DCC is "the administrative structure in place to oversee the development and operation of community correction facilities, programs, and services, including probation and parole supervision." Ark. Code Ann. § 16-93-1202(4) (2007 Supp.) Since that time, he says he has had about ten parole plans denied for various reasons, including plans to parole: (1) to his wife in Newport, Arkansas, which was denied because she lived too close to a daycare or park; (2) to his wife's new residence in Batesville, Arkansas, which was denied because of children in the home; (3) to his wife's home, with the children to stay with a friend and her own children in a nearby trailer, which was denied because of the friend's children and because the parole officer thought Petitioner's wife and friend were lying; (4) to his natural father in Mississippi, which was denied because the landlord would not let Petitioner live on the property; (5) to a halfway house in Jackson, Mississippi, which was denied when the facility changed its policy; (6) to a friend in North Little Rock, Arkansas, which was denied due to the proximity of a church; (7) to a friend in Marmaduke, Arkansas, which was denied because the friend could not provide a residence; (8) to a friend in Cave City, Arkansas, which apparently was denied due to lack of a phone number; (9) to a halfway house in Oklahoma City, Oklahoma, which was denied

---

[1]Respondent's exhibits are attached to docket entry #8.

because he had no family there; and (10) to a friend in North Little Rock, which is still pending (docket entry #3, at 1-2).

He submits a copy of one DCC decision, dated April 6, 2006, stating that his proposed parole plan to Latonya Campbell in North Little Rock had been denied because the proposed residence was too close to a boys and girls club and a school.[2]  He was instructed to submit a new plan with a residence not within 2,000 feet of a daycare, church or school.  (Pet'r Ex. A to docket entry #3.)

In July 2006, Petitioner filed in the Jackson County Circuit Court a state petition for writ of habeas corpus, alleging essentially the same grounds for relief as are raised in his current federal petition.  (Resp't Ex. B.)  The state petition was denied as failing to raise issues cognizable in a state habeas proceeding, *i.e.*, either that the trial court in which he was convicted lacked jurisdiction or that the commitment was invalid on its face.  *Hodges v. Norris*, No. CV-2006-127 (Jackson Co. Cir. Ct. Aug. 7, 2006) (Resp't Ex. C); *see* Ark. Code Ann. § 16-112-101, *et seq.* (2006).  The Arkansas Supreme Court affirmed.  *Hodges v. Norris*, No. 06-1021, 2007 WL 776802 (Ark. Sup. Ct. Mar. 15, 2007) (Resp't Ex. D).

Petitioner then filed this federal habeas petition, advancing three claims:

1.      Denial of some of his parole plans based on Ark. Code Ann. § 5-14-128 constituted an *ex post facto* violation;

2.      His due process rights have been violated because he has been given no recourse for the denial of any of his parole plans; and

3.      He is being held under a parole/transfer eligibility law that was not in effect at the time of the alleged offenses, constituting a second *ex post facto* violation.

---

[2]It is unclear if this is one of the ten enumerated plans above.

Respondent asserts that Petitioner's claims should be dismissed as procedurally barred due to his failure to present them properly to the state courts.[3]  *See Coleman v. Thompson*, 501 U.S. 722 (1991).  Because the Court finds that none of Petitioner's claims entitles him to relief on the merits, the exhaustion and procedural default issues need not be addressed.  *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir.) *cert. denied*, 127 S. Ct. 583 (2006) (because procedural default does not constitute jurisdictional bar to federal habeas review, court may proceed to the merits in the interest of judicial economy); *Khaalid v. Bowersox*, 259 F.3d 975, 978 (8th Cir. 2001) (declining to address "the complexities of the procedural bar issue" where the claim is more easily resolved on the merits); 28 U.S.C. § 2254(b)(2) (permitting federal court to deny habeas petition on merits notwithstanding applicant's failure to exhaust state remedies).

## II.
## Denial of Parole Plans

Petitioner first contends that denial of two of his proposed parole plans[4] was based on Ark. Code Ann. § 5-14-128 (2006), which prohibits certain registered sex offenders from residing within 2,000 feet of any school or daycare facility.  He says the law was enacted

---

[3]Respondent also contends that Petitioner's claims are not proper for habeas review and instead should have been raised in a civil rights complaint pursuant to 42 U.S.C. § 1983.  While a prisoner may seek relief under § 1983 that will invalidate the state procedures used to determine parole eligibility or suitability, he may not utilize § 1983 when he seeks immediate or speedier release into the community.  *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).  Here, Petitioner seeks immediate release and approval of a parole plan.  As he has already been granted parole, it appears that his release hinges only on approval of a plan.  As such, his claims are appropriately brought via a petition for writ of habeas corpus.  *Id.*  Moreover, regardless of the form of relief sought, his claims would not entitle him to relief for the reasons stated.

[4]The one to his wife in Newport and the one to Ms. Campbell in North Little Rock which was denied on April 6, 2006.

after his alleged crimes occurred and thus its application to him constitutes an *ex post facto* violation.   Secondly, he argues that he is being held in violation of his rights to due process guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution in that he has been given no recourse for the denial of any of his parole plans, and no one will provide him with information as to how to appeal.

A.    Due Process.

The Fourteenth Amendment to the Constitution provides in part that no state shall "deprive any person of life, liberty, or property without due process of law."   U.S. Const. amend. XIV, § 1.   Protected liberty interests may arise from the Due Process Clause itself or from state laws.   *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The United States Supreme Court has held that a convicted person has no federal constitutional or inherent right "to be conditionally released before the expiration of a valid sentence."   *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).   The mere possibility of parole, without more, provides no more than a hope that the benefit will be obtained and does not create an entitlement to due process under the Fourteenth Amendment.   *Id.* at 11; *see Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (inmate has no constitutionally protected liberty interest in the possibility of parole).

In establishing a parole system, a state may, nevertheless, create a liberty interest that is protectible under the Fourteenth Amendment.   *Greenholtz*, 442 U.S. at 12; *see Board of Pardons v. Allen*, 482 U.S. 369, 373-81 (1987).   However, nothing in the Arkansas parole statutes creates anything more than a mere possibility of parole, and thus the statutes do not establish any right to release on parole which would invoke due process protection. *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *Parker v. Corrothers*, 750

F.2d 653, 655-57 (8th Cir. 1984); *Robinson v. Mabry*, 476 F. Supp. 1022, 1023 (E.D. Ark. 1979); *see Allen*, 482 U.S. at 378 n.10.

Instead, the statutes place minimal limitations on the Board's discretion and provide that the Board "may" release an individual on parole when, in its opinion, there is a reasonable probability that he can be released without detriment to the community or himself. Ark. Code Ann. § 16-93-701(a)(1). The statutes regarding transfer eligibility expressly state that "[n]othing in this subchapter shall grant any offender the right to be sentenced or transferred under these provisions as a matter of right." *Id.* § 16-93-1210. The statutes also clearly provide for discretion on the part of the Board in setting conditions for parole and in determining if or when a particular inmate will be paroled or transferred from the ADC to DCC supervision. *E.g., id.* §§ 16-93-206(a)(1), (e)(1) & (f), 16-93-1302. As stated by the Arkansas Supreme Court, the Board "retains the power over who shall be placed on parole, and the time and conditions of parole." *Hodges v. Norris*, No. 02-786, 2004 WL 439982, *2 (Ark. Sup. Ct. Mar. 11, 2004) (unpub. op.).

The Arkansas Supreme Court has repeatedly emphasized the broad discretionary authority granted to the Board under the state's parole and transfer statutes. *Michalek v. Lockhart*, 730 S.W.2d 210, 211 (Ark. 1987); *see Dougan v. Ford*, No. 04-623, 2005 WL 2387576, *2 (Ark. Sup. Ct. Sept. 29, 2005) (unpub.) ("If the conditions [set by the Board] are too onerous, appellant could decline to accept the conditions set, and elect to serve out his sentence instead."); *Hodges*, *supra* at *2 (holding that completion of sex offender treatment program as a condition for parole was "well within the Board's discretionary power"); *Ensey v. Norris*, No. 99-752, 2001 WL 469154, *2 (Ark. Sup. Ct. May 3, 2001) (same); *Maxie v. Gaines*, No. 94-313, 1994 WL 571967, *1 (Ark. Sup. Ct. Oct. 10, 1994)

("the statute which provides in pertinent part that the parole board may release an eligible prisoner under certain conditions ... does not create a liberty interest in parole; that is, the board's determinations regarding parole are discretionary").

When a prisoner is committed to the custody of a state penal authority, such as the ADC, "he can be assured of only one thing – that he will be released from the State's custody at the end of the term of years specified by the sentencing court." *Richmond v. Duke*, 909 F. Supp. 626, 631 (E.D. Ark. 1995).  Petitioner has no federal or state liberty interest in the possibility of obtaining parole, and he is thus not entitled to any due process protections in connection with his parole proceedings or the particular conditions imposed by the Board or the DCC in their discretion.  *See Henderson v. Campbell*, 975 F.2d 866 (8th Cir. 1992) (unpub. table op.) (dismissing civil rights complaint seeking approval of preferred parole-release plan or explanation as to why plan was unsuitable; holding that claim did not rise to level of constitutional violation "[b]ecause parole officers possess wide discretion in imposing conditions of parole").  Petitioner's due process claim should be dismissed.

     B.    <u>Ex Post Facto Violation</u>.

The states are prohibited from enacting an *ex post facto* law, that is, a law which, by retrospective operation, alters the definition of criminal conduct or increases the punishment for a crime after its commission. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997); *see* U.S. Const., Art. I, § 10, cl. 1.  Retroactive changes in the law governing parole of prisoners, in some instances, may violate this precept.  *Garner v. Jones*, 529 U.S. 244, 250 (2000).  The critical question is whether the challenged law "creates a significant risk of

prolonging [the petitioner's] incarceration" or otherwise "increasing the measure of punishment" for the covered crimes.  *Id.* at 251-52.

Petitioner was convicted in 1995 for crimes alleged to have occurred in 1993 and 1994.  (*See* Resp't Ex. A.)  In 2003, the Arkansas legislature enacted Ark Code Ann. § 5-14-128, making it a Class D felony for certain registered sex offenders to "reside within two thousand feet (2,000') of the property on which any public or private elementary or secondary school or daycare facility is located."  *Id.* § 5-14-128(a); *see* 2003 Ark. Acts, No. 330, § 3.[5]  Petitioner argues that § 5-14-128's residency restriction has been applied improperly to him as a basis for denying his parole plans.  This argument fails.

Section 5-14-128 is a substantive criminal statute, and there is no allegation that Petitioner has been charged with violating that statute.  The April 2006 parole denial contains no reference to the statute.  Instead, it appears that a residency restriction, using language similar to § 5-14-128, is being applied as an independent condition of parole.  As stated, the Board is free to impose parole conditions as deemed appropriate.  It is not unreasonable — nor would it have been unreasonable before enactment of § 5-14-128 – for the Board or the DCC to prohibit a paroled sex offender from living near a school or daycare facility, particularly when his offenses involved child victims.[6]  As the statute

---

[5]The statute was amended in 2007 to extend the restriction to public parks and youth centers.  Ark. Code Ann. § 5-14-128(a) & (e) (2007 Supp.).

[6]Petitioner was convicted of violating a minor, his attempted rape conviction apparently also involved a minor, he says he has been falsely accused of three other crimes against children, and he admits that he abused his own children in the past.  (*See* Resp't Ex. A; Pet'r Ex. D & I to docket entry #12.)

Petitioner challenges has not been applied to him, there has been no *ex post facto* violation.

Furthermore, no *ex post facto* violation will occur should Petitioner be charged under the statute in the future.  Examining the legislative background and judicial interpretation by the state supreme court, the Eighth Circuit Court of Appeals recently found that the Arkansas General Assembly had a "regulatory and non-punitive" purpose in enacting § 5-14-128's residency restriction, i.e., to protect the public safety rather than to punish sex offenders.  *Weems v. Little Rock Police Dept.*, 453 F.3d 1010, 1017 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2128 (2007).  The Court of Appeals also found that, because the Arkansas statutory plan calls for the particularized risk assessment of sex offenders, its residency restriction was not "so punitive in effect as to negate the legislature's intent to create a civil, non-punitive regulatory scheme" and was "not excessive in relation to the rational purpose of minimizing the risk of sex crimes against minors."  *Id.*  The Court of Appeals, therefore, concluded that § 5-14-128 was not an unconstitutional *ex post facto* law as applied to offenders convicted prior to enactment of the statute.  *Id.*; *see also Doe v. Miller*, 405 F.3d 700, 718-23 (8th Cir.), *cert. denied*, 546 U.S. 1034 (2005) (holding that Iowa statute with 2000-foot residency restriction was not unconstitutional *ex post facto* law).

Petitioner's attempted rape conviction requires him to register as a sex offender.  Ark. Code Ann. § 12-12-901, *et seq.* (2003 & 2007 Supp.).  He admits that he has been assessed as a "Level 3" sex offender (docket entry #5, ¶ 4).  As such, he will be subject to § 5-14-128's residency restrictions upon his release into the community.  *See* Ark. Code Ann. § 5-14-128(a) (restriction applies to Level 3 or Level 4 offenders); *Weems*, 453 F.3d

at 1013-14 (stating that restriction applies only to Level 3 "high risk" offenders and Level 4 "sexually violent predators").   Approving a parole plan in contravention to the statute would place Petitioner in violation of the law.   Therefore, the Board and DCC acted well within their discretionary authority in disapproving Petitioner's proposed plans.

Petitioner's *ex post facto* claim regarding § 5-14-128 should be dismissed.


III.
*Ex Post Facto* Claim Regarding Parole Eligibility Law

Petitioner also argues a second *ex post facto* violation "due to the fact that he is being held under the T.E. [transfer eligibility] law which came into effect on January 1, 1994 and the proof at his hearings was that the crime was alleged to have occurred sometime in 1992 which would have put petitioner under the P.E. [parole eligibility] law" (docket entry #2, at 2).   He says the new law does not allow for good time to reduce the time of a sentence.   He bases his argument on testimony that he believes the victim gave at an omnibus hearing, his sentencing, or some other hearing in 1995, where she said the alleged crime happened when she lived with Petitioner in a trailer that he and his wife owned.   According to Petitioner, this would have been in 1992, as opposed to November 1, 1993, and April 30, 1994, as stated on his judgment.   (*See* Resp't Ex. A.)

Respondent has not directly addressed this issue; however, it is clear that this claim also is without merit.   In pleading guilty, a defendant admits all factual allegations made in an indictment or charging information and waives all challenges that do not relate to jurisdiction.   *United States v. White*, 408 F.3d 399, 402 (8th Cir.), *cert. denied*, 546 U.S. 1025 (2005); *Weisberg v. Minnesota*, 29 F.3d 1271, 1279-81 (8th Cir. 1994); *O'Leary v.*

*United States*, 856 F.2d 1142, 1143 (8th Cir. 1988).  Petitioner does not allege that the information was insufficient to confer jurisdiction on the trial court, or that his guilty plea was invalid.[7]  Therefore, he has waived the right to contest the offense dates as charged, and his third claim should be dismissed as without merit.

IV.
Petitioner's Pending Motions

Petitioner has filed a motion for production of transcript and other documents (docket entry #4), seeking a copy of the reason his first parole plan was denied, and the transcript of a state court hearing sometime in 1995 where the victim testified about when the alleged crimes occurred.  He has also filed a motion for partial summary judgment (docket entry #5), seeking judgment on his first claim.  Due to the recommendation that all claims should be dismissed, both motions should be denied.

Petitioner has also filed a motion for default judgment (docket entry #13), correctly asserting that Respondent has not mentioned his due process claim regarding denial of his parole plans and his *ex post facto* claim regarding the applicable parole/transfer eligibility law.  Respondent's failure to address these claims certainly frustrates the Court's review, but it does not entitle Petitioner to judgment on the merits.  Default judgment is an extreme sanction that is disfavored in habeas cases, and some courts have even held that it is unavailable.  *Lemons v. O'Sullivan*, 54 F.3d 357, 364-65 (7th Cir. 1995); *Gordon v.*

---

[7]Because Petitioner has already litigated a § 2254 habeas action challenging the guilty plea which resulted in his convictions, *Hodges v. Norris*, No. 5:97cv165 (E.D. Ark. Dec. 16, 1998), this Court is without jurisdiction to consider any new claim in that regard absent authorization from the Eighth Circuit Court of Appeals.  *See* 28 U.S.C. § 2244(b) (imposing restrictions on successive habeas applications); *Burton v. Stewart*, 127 S. Ct. 793, 796, 799 (2007).

*Duran*, 895 F.2d 610, 612 (9th Cir. 1990); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970).   Releasing a properly convicted prisoner by granting habeas relief is a disproportionate sanction for the technical violation that occurred here, particularly because the Court has been able to determine from the record presented that the overlooked claims do not entitle Petitioner to federal habeas relief.  *See Lemons*, 54 F.3d at 364-65; Rule 4, Rules Governing § 2254 Cases in United States District Courts (if it "plainly appears" from the habeas petition and exhibits that the petitioner is not entitled to relief, judge may dismiss the petition without ordering response).  His motion for default judgment should be denied.

V.
Conclusion

Accordingly, this 28 U.S.C. § 2254 petition for writ of habeas corpus (docket entry #2) should be **denied**, and Respondent's motion to dismiss (docket entry #8) should be **granted**, thereby dismissing this action in its entirety, with prejudice.  Petitioner's motions for production, for partial summary judgment, and for default judgment (docket entries #4, #5, #13) should be **denied**.

DATED this 28th day of November, 2007.


_____
UNITED STATES MAGISTRATE JUDGE